JUSTICE GRAY
dissenting.
I respectfully dissent from the opinion of the majority. The issue before us requires a straightforward interpretation of the meaning of “original appointment,” as that phrase is used in § 7-33-4107, MCA, for purposes of determining whether Mr. Link met the statutory qualifications for firefighters at the time he was considered and rejected for a position as a firefighter in the City of Lewistown Fire Department. It is my view that the answer is equally straightforward: Mr. Link had not been appointed as a firefighter pursuant to § 7-33-4106, MCA, before he reached 34 years of age; therefore, he did not meet the statutory qualifications for firefighters under § 7-33-4107, MCA.
The majority relies briefly on five different bases, each set forth in from one to four sentences, to support its result in this case; this almost complete absence of discussion or analysis reflects the inherent weakness of the majority’s conclusion. An appropriate statutory analysis mandates a conclusion that the District Court did not err in granting summary judgment to the City. That analysis is set forth below, followed by a discussion of the flaws in the majority’s approach.
The statutes relating to municipal fire departments are contained in Title 7, Chapter 33, Part 41, Montana Code Annotated. Section 7-33-4101, MCA, authorizes and requires a fire department in every Montana city and town; those departments are to be organized and managed as mandated in part 41. The composition of municipal fire departments and the duties of the fire chief and assistant chief are set forth in §§ 7-33-4103 and 7-33-4104, MCA.
Section 7-33-4106, MCA, addresses the manner in which the chief, assistant chief and all firefighters of the department mandated by § 7-33-4101, MCA, must be selected; it specifically requires the mayor, with the city council’s consent, to appoint each of them to the position. Finally, § 7-33-4107, MCA, sets out the qualifications for the position of firefighter; it includes a determination by the Montana legislature that age is a bona fide occupational qualification for the position and *456 goes on to require that firefighters “shall not be more than 34 years of age at the time of original appointment[.]”
It is the latter statutory requirement that is at issue in this case. The language is clear and plain. A person cannot be more than 34 years old when originally appointed to a firefighter position. Reading this language together with the preceding statutes governing municipal fire departments can produce only one result: the “original appointment” refers back to the only appointment process mentioned in the statutes — the appointment by the mayor and city council required by § 7-33-4106, MCA. Applying this straightforward statutory interpretation mandates a holding by this Court that the District Court did not err in ruling that the City was prohibited from hiring a firefighter into its municipal fire department who was over 34 years old at the time he was being considered and who had not previously been appointed to a firefighter position in the manner required by § 7-33-4106, MCA.
The majority relies in part on § 7-33-4109, MCA, which specifically relates to supplementary volunteer fire departments, in reaching its result. Nothing in that statute permits, much less requires, such a conclusion. No statutory language mandates the manner in which such volunteers are to be selected. The majority does not seem to understand what appears so clear to me from the very construction and organization of these statutes; namely, the very fundamental differences between full-time, professional firefighters and fire departments mandated by §§ 7-33-4101 through 7-33-4107, MCA, and supplementary volunteer firefighters and fire departments authorized under § 7-33-4109, MCA. The members of a volunteer fire department authorized by § 7-33-4109, MCA, are “enrolled members” of such a department, in contrast to firefighters “appointed” to municipal fire departments. The volunteers’ duties, by statute, are to assist paid fire departments. And, while it is true, as the majority suggests, that volunteers are “part-paid,” they are not permanent part-time employees as we ordinarily think of such part-time workers. Indeed, under § 7-33-4109, MCA, volunteers are paid only for such fires as they are called out to assist in fighting; that pay can be as little as $1 per hour of service.
The majority begins its shotgun approach to this case by suggesting that because the City’s rules and regulations require part-paid firefighters to be appointed by the fire chief, this “delegation of authority” regarding part-paid firefighters estops the City from denying the validity of that delegation as to full-time firefighters. As *457 discussed above, the two situations are not at all comparable. No statutory hiring requirements exist vis-a-vis part-paid firefighters; a specific statutory requirement — appointment by the mayor and council — exists for hiring full-time firefighters. Furthermore, both the fire chief’s affidavit in this case and the City’s regulations make it clear that no delegation of authority exists regarding the hiring of full-time firefighters.
In addition, contrary to the majority’s suggestion in this regard, the City does not attempt to deny the validity of the rules and regulations regarding selection of part-paid firefighters by the fire chief with the approval of the full-time firefighters. As discussed, the two situations are entirely separate. Thus, there is nothing upon which the City can be estopped. Finally, the majority’s shorthand presentation of the estoppel basis of support for its conclusion does not indicate whether collateral estoppel, judicial estoppel or equitable estoppel is being applied, much less how the required elements for the purported estoppel are met in this case.
The majority next relies on the legislative history of § 7-33-4107, MCA, noting that concerns therein about the retirement and disability system formed part of the basis for the maximum age for original appointment as a firefighter. From this concern, and because part-paid firefighters like Mr. Link can contribute to the FURS, the majority states that it is reasonable to conclude that the legislature intended the maximum age to apply to part-paid and full-time firefighters. First, this conclusion seems to be a non sequitur. The question before us is not whether the age limitation applies to volunteers; the question is the meaning of “original appointment” in § 7-33-4107, MCA. In addition, it is not necessary to look to the legislative history to determine the meaning of that statutory language because the language is clear and plain and susceptible of only one meaning.
Assuming arguendo that resort to the legislative history is appropriate, it is my opinion that that history supports a result opposite from that reached by the majority. The concern relating to the firefighter’s retirement and disability situation found in the legislative history is that, due to the stamina and agility required and the very hazardous and stressful nature of firefighting, it is important for firefighters to be able to retire at a relatively young age — for the sake of both themselves and their colleagues. In connection with the amendment raising the maximum hiring age to 34 from 31, professional firefighters expressed concern that the amendment would *458 move in the wrong direction, by preventing firefighters from retiring at an earlier age and keeping them working into more advanced years. These concerns are not applicable to part-paid firefighters.
The result reached by the majority in this case produces exactly the result over which concern is expressed in the legislative history; it allows volunteer firefighters to be hired on as full-time firefighters at any age. Under the majority’s result, as long as a volunteer firefighter has been selected for that duty before reaching 34 years of age, he or she qualifies for appointment as a full-time professional firefighter at age 40, 45, 50 or even later, notwithstanding the statutory maximum age. This total gutting of the maximum age qualification clearly is not what the Montana legislature intended.
The majority next relies on the Human Rights Commission’s Elliott decision. The problem in this regard is that the issue presently before the Court is not the same issue addressed by the Commission in Elliott.
The issue in Elliott was whether the age limit for time of original appointment meant when appointed to a specific fire department (that is, the one most recently being applied to) or to any fire department in Montana. The Commission essentially concluded that “original appointment” under § 7-33-4107, MCA, means any fire department in Montana as opposed to the fire department to which one currently is applying for a position. The Commission did not address, presumably because it was not raised, the issue before us here; namely, the meaning of “original appointment” under § 7-33-4107, MCA, in relation to the “appointment by mayor” requirement of § 7-33-4106, MCA.
Elliott involved a person who had been a part-paid firefighter elsewhere attempting to be hired as a full-time firefighter in the City of Helena Fire Department when he was more than 34 years old. Helena asserted that “originally appointed” meant, in that case, first hired as a firefighter (including as a part-paid firefighter) by the City of Helena. Elliott asserted, and the Commission concluded, that the phrase meant first hired by any fire department in Montana. The Commission was correct in ruling that the original appointment language is not location specific and, if the same issue were before us in this case, I would give that conclusion deference. But the two issues are not the same; therefore, Elliott is not applicable here.
The majority next states that an Attorney General’s opinion supports a conclusion that appointment as a part-paid firefighter “may” constitute an original appointment under § 7-33-4107, MCA. The *459 Attorney General’s opinion provides no support for such a conclusion. Neither the Attorney General’s opinion nor the factual situation on which it is based relates in any way to part-paid firefighters.
The fifth and final basis for the majority’s conclusion relates to age discrimination. As with its estoppel position, the majority’s conclusion that the District Court’s interpretation of § 7-33-4107, MCA, results in the “likelihood” that the statute would violate “laws” prohibiting age discrimination is, at best, shorthand. The majority does not indicate which laws would be violated or provide any analysis as to how the facts of Mr. Link’s case would result in such a violation.
In this regard, it should be noted that the situation before us does not violate the federal Age Discrimination in Employment Act. Under the ADEA, it is not unlawful for a political subdivision employer to refuse to hire an individual because of the individual’s age if the refusal to hire is (1) with regard to employment as a firefighter and the individual has attained the maximum hiring age in effect under applicable state law on March 3,1983, and (2) pursuant to a bona fide hiring plan that is not a subterfuge to avoid the purposes of the ADEA. 29 U.S.C. § 623(j). The maximum hiring age of 34 years was in effect in Montana on March 3,1983, and nothing in this case suggests that the limitation is a subterfuge.
In summary, it is my view that Mr. Link was not appointed as a firefighter pursuant to § 7-33-4106, MCA, before he reached the maximum hiring age for that position. As a result, he did not meet the statutory qualifications for a full-time firefighter. I would affirm the District Court.
JUSTICE WEBER joins in the foregoing dissent of JUSTICE GRAY.